UNITED STATES DISTRICT COURT       **O**
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| DAN KOVACIC, *et al*, | § | |
| | § | |
|       Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. L-09-2 |
| | § | |
| LARRY BROWN ENTERPRISES, L.L.C., | § | |
| D/B/A/CHEERS COCKTAILS, *et al*, | § | |
| | § | |
|       Defendants. | § | |

## ORDER

On September 3, 2009, Defendants City of Laredo, Juan Villarreal, and Jose Rubio ("Defendants") filed a Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim on which relief can be granted.  [Dkt. No. 68].[1]  After careful consideration of Defendants' motion, the contents of the Complaint, and the applicable law, the Court GRANTS in part and DENIES in part Defendants' Motion.

## I.      BACKGROUND

The following facts are taken from Plaintiff's Fourth Amended Complaint, [Dkt. No. 78]: On the evening of August 9, 2007, Zachary Kovacic ("Kovacic"), while in Laredo, Texas, for work, met his co-workers at Cheers Cocktail Lounge ("Cheers"), located at 7004 San Dario Ave., Laredo, Texas.  [Dkt. No. 78 at 7].  After a few hours of drinking, Kovacic had become intoxicated and was escorted outside by employees of Cheers.  [*Id.* at 8].  "Thereafter, at approximately 1:33 a.m., Laredo Police Department officers were called and notified by Cheers' employees that there was an intoxicated patron at the bar that needed to be escorted off the

---

[1] While Defendants' Motion to Dismiss, [Dkt. No. 68], references Plaintiffs' Fourth Amended Complaint as docket number 52, that entry has been stricken from the record as it was filed without obtaining leave from the Court.  [Dkt. No. 61].  Plaintiffs have subsequently obtained leave to file their Fourth Amended Complaint, [Dkt. No. 76], and re-filed it as document number 78.

premises."   [*Id.*].

After Laredo Police Officers Juan Villarreal and Jose Rubio arrived, "knowing that Zachary was a danger to himself and others . . . and contrary to the repeated requests of his family and co-workers to release him into their care," they placed him in the back of their patrol car and removed him from the premises.   [*Id.*].   Plaintiffs also aver that "it has been determined that Zachary Kovacic had a blood alcohol level of .215% at the time of leaving Cheers."   [*Id.*].

The officers then drove Kovacic "several miles away" and "unceremoniously released" Kovacic at the "darkened intersection of Del Mar and Loop 20 at approximately 2:08 a.m.."   [*Id.* at 9].   This location was "approximately 1.5 miles from the Value Inn where he was staying with his wife and child."   [*Id.*].   At about 2:33 a.m., Kovacic was hit on the roadway by an unknown hit-and-run driver.   [*Id.*].   Kovacic was found alive, despite "severe, debilitating injuries," and was taken to Doctor's Hospital in Laredo, TX.   [*Id.*]   "Upon arrival, medical treatment was rendered and a blood test was performed which indicated a blood alcohol level of .227% (serum calculation)."   [*Id.*].   Kovacic did not recover, and subsequently died from his injuries.   [*Id.*].

Plaintiffs, all having an interest in the estate of Zachary Kovacic, filed this action against: Larry Brown Enterprises, doing business as "Cheers Cocktails"; Doug Mercer, individually and doing business as "Cheers Cocktail Lounge"; Officers Juan Villarreal and Jose Rubio, both individually and in their official capacities; then Chief of Police Agustin Dovalina, both individually and in his official capacity; and the City of Laredo, TX.   [*Id.* at 1-3].   Chief of Police Agustin Dovalina has been dismissed as a defendant in his personal and official capacities.   [Dkt. Nos. 33, 67].   Plaintiffs' Complaint alleges multiple causes of action, which can be divided into claims against Larry Brown Enterprises and Doug Mercer (collectively "Cheers"), claims against Officer Villarreal and Officer Rubio (collectively "the Officers"), and claims against the City of

Laredo ("the City").

Against Cheers, Plaintiffs allege:  (1) violation of the Texas Dram Shop Act; (2) assault and battery; (3) false imprisonment; and (4) negligence.  [Dkt. No. 78 at 9-15].  Against the Officers and the City, Plaintiffs allege that the Officers deprived Zachary Kovacic of his constitutional rights against unreasonable seizure and denied him of Due Process in violation of 42 U.S.C. § 1983, and that the City is liable for the constitutional violations of the Officers.  [*Id.* at 15-26].  In the instant motion, the Officers and the City move to dismiss all the claims against them under Federal Rule of Civil Procedure 12(b)(6), on the premise that the Officers are protected under the doctrine of qualified immunity, and that without a constitutional claim against the Officers, the derivative claim against the City must also be dismissed.  [Dkt. No. 72 at 1-2].

## II.    DISCUSSION

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must state " a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P.  8(a)(2). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*,  550 U.S. 544, 555 (2007)).  For a complaint to withstand a Rule 12(b)(6) motion to dismiss, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  A complaint meets this requirement when it contains facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   When evaluating a complaint against a 12(b)(6) motion, the Supreme Court in *Iqbal* further clarified:

> Two working principles underlie our decision in *Twombly*. First, the tenet
> that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Id.* at 1949-50 (citing FED. R. CIV. P. 8(a)(2)).   After recognizing the applicable standards set out in *Iqbal* and *Twombly*, the Court now turns to the merits of Defendants' motion.

### A.   Qualified Immunity

Defendants' main ground for dismissal is based on the premise that the Officers are protected from suit under the doctrine of qualified immunity.  [Dkt. No. 68 at 5].  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *Pearson v. Callahan,* 129 S.Ct. 808, 815 (2009)).  The qualified immunity doctrine developed in order to balance the need for vindication of constitutional guarantees against the social cost of litigation which would inhibit law enforcement officials from carrying out their duties due to fear of personal monetary liability.  *Anderson v. Creighton,* 483 U.S. 635, 638 (1987).  To be clear, a defense of qualified immunity is only applicable to claims against officers in their *individual* capacity, as claims against officers in an official capacity are treated as claims against the municipality, and municipalities are not entitled to qualified immunity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]fficials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.")

After a defendant invokes the affirmative defense of qualified immunity, the burden

shifts to the plaintiff, who must demonstrate its inapplicability.  *Club Retro,* 568 F.3d at 194.  To meet this burden, the Plaintiff must "satisfy a two-prong test."  *Id.* (citing *Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 253 (5th Cir.2005)).  First, a plaintiff must allege that "defendants committed a constitutional violation under current law."  *Id.*  Second, a plaintiff must allege that "defendants actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id.*  The Court must apply this test to each of the alleged constitutional violations by the Officers in the complaint:  (1) that the Officers "detain[ed] and confin[ed] Zachary Kovacic in violation of the Fourth Amendment and its 'reasonableness' standard;" and (2) that the Officers violated Kovacic's Fourteenth Amendment right to Due Process under the "special relationship" and "state-created danger" theories.  [Dkt. No. 78 at 16, 21].

### i.      Fourth Amendment - Unreasonable Seizure/Excessive Force

The Fourth Amendment protects against "unreasonable searches and seizures."  U.S. CONST. amend. IV.  A person is "seized" by police officers "and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied."  *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations omitted).  As to what constitutes a "reasonable" seizure, the Supreme Court has explained: "[i]n a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence . . . [t]he arrest is constitutionally reasonable."  *Virginia v. Moore*, 128 S.Ct. 1598, 1604 (2008).

The Complaint alleges facts sufficient to support the claim that Kovacic was "seized" within the meaning of the Constitution, in that the Officers handcuffed him, placed him in the

back of the police car, and removed him from the premises. [Dkt. No. 78 at 8].   However, nowhere does the complaint allege facts sufficient to support a claim that this seizure was "unreasonable," or that excessive force was used.   Taking the facts of the Complaint as true, the Officers "were called and notified that there was an intoxicated patron at the bar that needed to be escorted off the premises."   [Dkt. No. 78 at 8].   The Complaint also alleges that "Kovacic had a blood alcohol level of .215% at the time of leaving Cheers" and that "Zachary was obviously intoxicated to the extent that he was both mentally and physically impaired and to the extent [that] he presented a clear danger to himself and others."   [Dkt. No. 78 at 8-9].   Indeed, the facts contained in the complaint itself demonstrate that Kovacic's seizure was *reasonable*.   Without going beyond the bare assertion that Kovacic's arrest was in violation of the Fourth Amendment, and in light of the fact that the complaint demonstrates the reasonableness of the same, Plaintiffs have not properly "alleged" this constitutional violation under the pleading requirements of *Iqbal/Twombly*.

Were it simply a matter of pleading, the Court might give Plaintiffs opportunity to correct this deficiency.  *See Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) ("[T]he court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity.").   But when the facts necessary to correct the deficiency are in such stark opposition to the facts of Kovacic's impairment which permeate the complaint and are necessary to support Plaintiffs other claims against the Officers and the City, such an opportunity would prove futile.   Thus, by not properly alleging this constitutional violation, Plaintiffs fail the first prong of the test against qualified immunity for the claims of unreasonable search, seizure and excessive force.   As a result, the Officers are entitled to qualified immunity from the claim that they violated the Fourth Amendment by "detaining and confining" Kovacic.

Plaintiffs also briefly allege a violation of the right to privacy, but allege no facts to support the same.  A thorough review of the complaint fails to disclose any facts sufficient to state a claim for relief on this basis.  Accordingly, the Officers are also entitled to qualified immunity from the claim that they violated Kovacic's right to privacy.

### ii.    Due Process

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV.  "Under traditional notions of Due Process, the fourteenth amendment was 'intended to secure the individual from the arbitrary exercise of the powers of government' which resulted in 'grievous losses' for the individual."  *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 109 (1989)).  As a general rule, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989).  However, certain exceptions to this rule have been acknowledged by the Supreme Court and the Fifth Circuit, including the "special relationship" theory and the "state-created danger" theory.

Plaintiffs claim that Kovacic's Fourteenth Amendment Due Process rights to "life, liberty, freedom, [and] bodily integrity" were violated by the actions of the Officers.  [Dkt. No. 78 at 23].  It is undisputed that the unknown hit-and-run driver was a private actor and that the impact with the vehicle was responsible for the injuries that caused Kovacic's death.  Due to this fact, Plaintiffs' claims for violations of due process can only stand under the two exceptions to the rule against state liability for injuries caused by private actors.

### a.     Special Relationship

In *DeShaney*, the Supreme Court held that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. The Supreme Court explained:

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - *e.g.,* food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*Id.* at 200. The Fifth Circuit has construed the Supreme Court's use of the term "custody" in this sense to mean "incarceration, institutionalization, or other similar restraint of personal liberty," and has stated it is this restraint, not the State's failure to act, that creates a "special relationship" and invokes the protection of the Due Process Clause. *Walton v. Alexander*, 44 F.3d 1297, 1303 (5th Cir. 1995) (*en banc*) (quoting *DeShaney*, 489 U.S. at 200). "In order to state a claim under the special relationship theory, the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence, which the Supreme Court has termed 'deliberate indifference.'" *Doe v. San Antonio Indep. Sch. Dist.*, 197 Fed.Appx. 296, 300 (5th Cir. 2006).

Plaintiffs allege that Kovacic was handcuffed, placed in the back of a police car, and transported against his will, which clearly meets the "custody" requirement of *DeShaney* and *Walton*. Defendants do not dispute that Kovacic was at one time in custody, but contend that because Kovacic was not in the custody of the Officers at the time he was struck by the vehicle,

the special relationship theory does not apply.   [Dkt. No. 68 at 4].   To help analyze this contention, a closer review of the facts of *DeShaney* is beneficial.

The Supreme Court in *DeShaney* dealt with a similar situation of injury after release as a violation of Due Process.  *DeShaney*, 489 U.S. at 193-4.  Joshua DeShaney was a four year old boy who lived with his father.  *Id.* at 191.  After various reports of child abuse, Joshua was admitted to the hospital with multiple bruises and abrasions.  *Id.* at 192.  The Department of Social Services immediately obtained an order from a Wisconsin juvenile court which placed Joshua in the temporary custody of the hospital.  *Id.*  After three days, the state decided there was not enough evidence of child abuse to retain custody of Joshua, and released him back to his father.  *Id.*  After almost a year of investigation, subsequent trips to the emergency room, and no action to remove Joshua from his father's custody by the Department of Social Services, Joshua's father beat him into a life-threatening coma which resulted in a severe mental disability. *Id.* at 193.  Joshua's mother brought a claim against the County and various social workers under § 1983, alleging that Joshua had been deprived of liberty without due process of law, in violation of the Fourteenth Amendment.  The Supreme Court noted that Joshua's injuries occurred at the hands of the father, who was a private actor.  *Id.* at 201.  However, this did not end the analysis, as the Supreme Court went on to state that:

> While the State may have been aware of the dangers that Joshua faced in the free world, *it played no part in their creation, nor did it do anything to render him any more vulnerable to them.*  That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, *it placed him in no worse position than that in which he would have been had it not acted at all.*

*Id.* (emphasis added).  The above language has given rise to the "state-created danger" theory, discussed *infra*, which is not recognized in the Fifth Circuit.  See *infra*, II.A.ii.b..  Nonetheless, the Supreme Court's acknowledgement of these factors in the context of the special relationship

theory must be given due consideration.

Thus, while Defendants are correct in their assertion that Kovacic was ultimately killed by the acts of a private actor, the above language from *DeShaney* suggests that the Supreme Court recognized that this fact does not render a claim meritless.  In this case, the Officers *did* render Kovacic "more vulnerable" by transporting him from the bar to the gas station and releasing him in such a state, and they *did* place him in a "worse position than that in which he would have been had [they] not acted at all," as he had friends and relatives at the bar who could have looked after him.  While this Court is wary of expanding the doctrine of "special relationship" due process beyond precedent, the above-quoted language from the Supreme Court and the nature of the right to be protected by the theory itself suggest that current precedent provides room for Plaintiff's claim.

As the special relationship theory was born out of the idea that a duty is created when the state places a person in a position where they cannot act for themselves (custody), the present case, as alleged, and Plaintiffs' application of the theory are consistent with its origin.  Precedent clearly dictates that the Officers had no duty to transport Kovacic home from the bar, but once they began that undertaking and placed him in custody, a duty arose to account for his "safety and general well-being."  *DeShaney*, 489 U.S. at 199-200.  Releasing Kovacic at an arbitrary location in an intoxicated state is not, as a matter of law, sufficient to discharge that duty.  A mechanical operation of law, as Defendants suggest, that relieves the Officers of their duty at the precise moment Kovacic is released, no matter the state he is released in or the circumstances he is released into, would render the duty to account for his "safety and general well-being" hollow.  Such a rule would constitutionally permit a state to release someone from custody at any location, in any condition or circumstances, as long as a non-state actor ultimately caused the

injury.  Due Process under the special relationship theory demands more than simply the act of release in order to discharge the duty of care that arises when custody begins.  Accordingly, the fact that the injury occurred after release does not, as a matter of law, require dismissal of Plaintiffs' claims.

The complaint also alleges that releasing Kovacic with the knowledge that he was "both mentally and physically impaired" constituted the requisite *mens rea* of "deliberate indifference" as required by *Doe*.  [Dkt. No. 78 at 23].  As such, Plaintiffs have satisfied the first prong of the test against qualified immunity by sufficiently alleging custody, injury, and deliberate indifference in order to support a constitutional violation based on the "special relationship" theory.

To satisfy the second prong, Plaintiffs must allege that the act of releasing Kovacic in an intoxicated state at the gas station "was objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Club Retro,* 568 F.3d at 194.  As the doctrine was first recognized in 1989 by the Supreme Court in *Deshaney*, the "special relationship" theory was clearly established law at the time of the incident in August 2007, almost 20 years later.  Also, as the Complaint is full of factual allegations that Kovacic was severely impaired at the time of release and was a danger to himself and others, the Plaintiffs have sufficiently alleged that the release was "objectively unreasonable."  The same facts alleged which allow the Plaintiffs to satisfy the "deliberate indifference" standard of the special relationship theory work to satisfy the "objectively unreasonable" standard of the test against qualified immunity.  Thus, the second prong of the test against qualified immunity has been satisfied by the Complaint.  With both prongs satisfied, the Plaintiffs have successfully met their burden to show that the Officers are not entitled to dismissal of this claim on the basis of

qualified immunity.

### b. State-Created Danger

Plaintiffs also claim a Due Process violation under the "state-created danger" theory. Defendants' motion to dismiss this claims is based, not on insufficiency of pleading or qualified immunity, but on the ground that this theory is not recognized as a valid basis for a claim in the Fifth Circuit.  Most recently, the Fifth Circuit has made clear: "[t]his Circuit has never expressly accepted the state-created danger theory that a due process violation can be found if a state created or increased the danger to the plaintiffs and acted with deliberate indifference."  *Hale v. Bexar County*, No. 08-50820, 2009 WL 2222833, at *4 (5th Cir. July 27, 2009).  *See also Rios v. City of Del Rio,* 444 F.3d 417, 422-23 (5th Cir. 2006) ("[N]either the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof. We have, however, many times refused to allow recovery sought to be predicated thereunder."); *Beltran v. City of El Paso,* 367 F.3d 299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability"); *Morin v. Moore,* 309 F.3d 316, 321-24 (5th Cir. 2002); *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 313-14 (5th Cir. 2002).

Though the Fifth Circuit has not recognized the state-created danger theory, it has not been without opportunity to do so.  When discussing the current state of the doctrine in the Fifth Circuit, a three judge panel, in *Breen v. Texas A&M Univ.*, noted that "a number of courts, including a majority of the federal circuits have adopted the state-created danger theory of section 1983 liabiltiy," and that "this court discussed the theory in no fewer than eleven published decisions prior to [2003]."  485 F.3d 325, 333-34 (5th Cir. 2007) ("*Breen I*").  The

Court in *Breen I* then addressed the question of whether the Fifth Circuit adopted the theory by its holding in *Scanlan v. Texas A&M Univ.*, 343 F.3d 533 (5th Cir. 2002).   The Court acknowledged that "[s]ince the *Scanlan* decision, the panels in three subsequent, unrelated cases have issued opinions that contained statements suggesting that *Scanlan* did not adopt the state-created danger theory." *Breen I*, 485 F.3d. at 336 (citing *Rios v. City of Del Rio,* 444 F.3d 417, 422-23 (5th Cir.2006); *Beltran*, 367 F.3d at 307; *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 249 n.5 (5th Cir.2003)).   Despite these cases to the contrary, the *Breen I* Court held that *Scanlan* did recognize the state-created danger theory, and that it is a valid basis for a claim in this Circuit.   *Breen I*, 485 F.3d. at 337.   However, the Fifth Circuit quickly stripped the opinion of all recognition of the theory by granting rehearing, *sua sponte*, and withdrawing the sections and footnotes of the opinion which held the theory valid.   *Breen v. Texas A&M Univ.*, 494 F.3d 516, 518 (5th Cir. 2007) (*per curiam*) ("*Breen II*").   Thus, the "state-created danger" theory reverted to its previous state of invalidity in the Fifth Circuit.

After a review of the theory's recent treatment by the Court of Appeals, it is clear that the Fifth Circuit does not currently accept the state-created danger theory as a valid basis for Due Process violations.   Accordingly, Defendants motion with respect to this claim must be granted and Plaintiffs' claims premised on the state-created danger theory must be dismissed under Federal Rule of Procedure 12(b)(6).

### B. Municipal Liability

Defendants also move to dismiss Plaintiffs' claim against the City under § 1983, on the ground that without a constitutional violation against the Officers due to their qualified immunity, the derivative claim for municipal liability must also be dismissed.   [Dkt. No. 68 at

15].  However, as discussed in part II(A)(ii)(b), *supra*, Plaintiffs' claim against the Officers for a violation of Due Process under the "special relationship" theory has not been defeated by qualified immunity.  Even if that were not the case, and the Officers were entitled to qualified immunity from all claims, Defendants still would not be entitled to a dismissal of the municipal liability claim.  Qualified immunity is a defense to claims against state actors in their *individual capacities only*, and "the Supreme Court has upheld municipal liability for § 1983 violations notwithstanding the qualified immunity of the individual municipal defendants."  *Babb v. Dorman*, 33 F.3d 472, 476 n.7 (5th Cir. 1994).  *See Brummett v. Camble,* 946 F.2d 1178, 1182 (5th Cir.1991) (citing *Owen v. City of Independence,* 445 U.S. 622, 638 (1980)).  *See also Hampton Co. Nat. Sur.*, *LLC v. Tunica County*, 543 F.3d 221, 227 (5th Cir. 2008) ("Unlike in the determination of qualified immunity for the Sheriff, the County cannot rely on there being no clearly established right when the Sheriff acted. Instead, a county may be liable even when the property right had not been clearly known.")  As the qualified immunity of the Officers in no way affects the municipal liability of the City, the former provides no grounds for the dismissal of the latter.  Accordingly, Defendants' motion to dismiss the municipal liability claim against the City under § 1983 must be denied.


## III.    CONCLUSION

For the above stated reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part:

GRANTED, in that Plaintiffs' claim against the Officers in their individual capacities for unreasonable seizure is hereby DISMISSED due to the Officer's qualified immunity.  Also, Plaintiff's claims against all defendants for any due process violations under the "state-created

danger" theory are hereby DISMISSED as the theory is not recognized as the basis for a claim in this Circuit.

DENIED, in that Plaintiffs' claims against the Officers in their individual capacities for a Due Process violation under the "special relationship" theory and Plaintiffs' claim against the City for municipal liability under § 1983 remain.

IT IS SO ORDERED.

Done this 22nd day of December, 2009, in Laredo, TX.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**To Insure Proper Notice, Each Party Who Receives This Order Shall Forward a Copy of it to Every Other Party And Affected Non-party Even Though They May Have Been Sent One by The Court.**