UNITED STATES DISTRICT COURT     O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| DAN KOVACIC, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. L-09-2 |
| § | |
| LARRY BROWN ENTERPRISES, L.L.C., § | |
| D/B/A/CHEERS COCKTAILS, *et al*, § | |
| § | |
| Defendants. § | |

## **ORDER**

On September 3, 2009, Defendants City of Laredo ("the City"), Officer Jose D. Rubio, and Officer Juan Villarreal ("the Officers") submitted a motion to dismiss all claims against them for failure to state a claim. [Dkt. No. 68].[1] While that motion was pending, the City and the Officers additionally submitted the instant motion for summary judgment, based largely on the same reasoning as the motion to dismiss. [Dkt. No. 89]. The Court then granted in part and denied in part the City and the Officers' motion to dismiss, by dismissing all claims except: (1) a claim under § 1983 against the Officers for a violation of due process under the special relationship theory, and (2) a claim under § 1983 against the City for municipal liability due to the conduct of the Officers. [Dkt. No. 104]. The Court now considers the City and the Officers' motion for summary judgment on these two remaining claims.

## **I. BACKGROUND**

The following facts are taken from Plaintiff's Fourth Amended Complaint, [Dkt. No. 78], and for the purposes of this summary judgment, are presumed to be true: on the evening of August 9, 2007, Zachary Kovacic ("Kovacic"), while in town for work, met his co-workers at

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing.

1 / 11

Cheers Cocktail Lounge, located at 7004 San Dario Ave., Laredo, TX. [Dkt. No. 78 at 7]. After a few hours of drinking at Cheers Cocktail Lounge, Kovacic had become intoxicated and was escorted outside by employees of Cheers. [*Id.* at 8]. Once outside, he was "involuntarily handcuffed" by the employees of Cheers. [*Id.*]. "Thereafter, at approximately 1:33 a.m., Laredo Police Department officers were called and notified by Cheers's employees that there was an intoxicated patron at the bar that needed to be escorted off the premises." [*Id.*]. Kovacic was held outside the bar until the police arrived. [*Id.*]. Laredo Police Officers Juan Villarreal and Jose Rubio arrived and, "contrary to the repeated requests of [Kovacic's] family and co-workers to release him into their care," placed Kovacic in the back of their patrol car and removed him from the premises. [*Id.*]. "[I]t has been determined that Zachary Kovacic had a blood alcohol level of .215% at the time of leaving Cheers." [*Id.*]. The officers then drove Kovacic "several miles away" and "unceremoniously released" Kovacic at the "intersection of Del Mar and Loop 20 at approximately 2:08 a.m." [*Id.* at 9]. This location was "approximately [five] miles from the [hotel] where he was staying with his wife and child." [*Id.*]. At about 2:33 a.m., Kovacic was hit on the roadway by an unknown hit-and-run driver. [*Id.*]. Kovacic was found alive, despite "severe, debilitating injuries," and was taken to Doctor's Hospital in Laredo, TX. [*Id.*]. "Upon arrival, medical treatment was rendered and a blood test was performed which indicated a blood alcohol level of .227% (serum calculation)." [*Id.*]. Kovacic did not recover, and subsequently died from his injuries. [*Id.*].

Plaintiffs, all having an interest in the estate of Zachary Kovacic, filed this action against: Larry Brown Enterprises, LLC doing business as "Cheers Cocktails"; Doug Mercer, individually and doing business as "Cheers Cocktail Lounge"; Officers Juan Villarreal and Jose Rubio, both individually and in their official capacities; then Chief of Police Agustin Dovalina, both

individually and in his official capacity; and the City of Laredo, TX. [*Id.* at 1-3]. Chief of Police Agustin Dovalina was subsequently dismissed as a defendant in his personal and official capacities. [Dkt. Nos. 33, 67]. Plaintiffs' Complaint alleges multiple causes of action, which can be divided into claims against Larry Brown Enterprises and Doug Mercer (collectively "Cheers"), claims against Officer Villarreal and Officer Rubio ("the Officers"), and claims against the City of Laredo ("the City").

As noted *supra*, the only remaining claim against the Officers is a § 1983 claim for violation of due process under the special relationship theory, and the only remaining claim against the City is a § 1983 claim for municipal liability due to the conduct of the Officers. [Dkt. No. 104]. The Officers and the City ("Defendants") move for summary judgment on these two remaining claims, and each will be discussed in turn.

## II. DISCUSSION

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Finally, all facts and evidence must be taken in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Defendants' motion for summary judgment will be evaluated under this standard.

### A. Violation of Due Process -- Special Relationship Theory

Defendants' motion for summary judgment on this claim is based on the argument that no special relationship existed after Kovacic was released from custody, and also that the Officers

are entitled to qualified immunity. [Dkt. No. 89 at 5]. These are the same arguments put forth in their motion to dismiss for failure to state a claim. [Dkt. No. 68]. The Court resolved these arguments as a matter of law in its Order granting in part and denying in part Defendants' motion to dismiss. [Dkt. No. 104].

Having determined that Plaintiffs' allegations as set forth in their Fourth Amended Complaint were sufficient to state a claim upon which relief may be granted, the Court now considers whether the summary judgment evidence raises a fact issue sufficient to defeat Defendants' instant motion. Although Defendants submit summary judgment evidence not previously considered by the Court, a thorough review of all the summary judgment evidence establishes that a factual dispute exists, sufficient to defeat summary judgment. In particular, while the Officers now dispute Kovacic's level of intoxication at the time he was picked up at Cheers and dropped off at the Speedy Stop,[2] the same Officers testified in deposition that Kovacic was impaired such that he presented a danger, to himself and others, if allowed to drive home. [Dkt. No. 91, Exhibit D at 141-42; Exhibit C at 44]. Accordingly, Defendants' motion for summary judgment on the § 1983 claim against the Officers for a violation of due process based on the special relationship theory is DENIED.

### B.     Municipal Liability

Defendants also move for summary judgment on the § 1983 municipal liability claim against the City, based on the argument that Plaintiffs cannot show that a "policy, practice or custom adopted with conscious indifference was the moving force behind such [a constitutional] violation." [Dkt. No. 98 at 9].

"It is well-established that a city is not liable under § 1983 on the theory of respondeat

---

[2] In his declaration, Officer Rubio minimizes Kovacic's level of intoxication, stating that he "did not notice any slurred speech," that Kovacic was "not falling down," and "steady on his feet." [Dkt. No. 89, Exhibit A].

superior" for the actions of its employees.  *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 694 (1978)).  "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."  *Peterson*, 588 F.3d at 847 (citing *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001)).  Defendants dispute Plaintiffs' ability to establish an official policy, that such a policy was adopted with "deliberate indifference," and that it was promulgated by the "policymaker."  [Dkt. No. 89 at 8; Dkt. No. 98 at n. 4]

### i.     Official Policy

With respect to the first element of a municipal liability claim, the Fifth Circuit has clarified:

> [T]he court *en banc* has agreed on the following formulation to govern the imposition of municipal liability:
>
> A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy.
>
> Official policy is:
>
> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.  Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).  Plaintiffs do not allege an official policy that has been officially adopted, as defined by the first formulation in *Webster*.

Instead, Plaintiffs allege an official policy under the second formulation: an informal, widespread practice of allowing police officers to release intoxicated individuals "when they knew them to be a danger to themselves or others." [Dkt. No. 91 at 30].

To dispute this allegation of an informal policy, Defendants submit the deposition of Assistant Police Chief Gilberto L. Navarro. [Dkt. No. 89 at 8; Exhibit C]. Navarro states that

> [t]he Police Department has not authorized, encouraged, sanctioned or condoned any custom or informal practice that gives police officers discretion to release persons arrested for public intoxication when the police officer knows that such conduct creates or increases a substantial risk of serious injury to the suspect being released or to others.

[Declaration of Gilberto L. Navarro, Dkt. No. 89, Exhibit C at ¶ 11]. However, Navarro goes on to state that "Webb County's refusal to accept public intoxication suspects has increased the incidences of intoxicated persons being released by police officers." [*Id.*]. Thus, after what seems to be a complete refutation of Plaintiffs' allegations, Navarro also affirms the fact that police officers have been releasing intoxicated individuals, and at an increasing rate.

As further evidence, Defendants attach to the deposition of Navarro the "only policy of the police department that refers specifically to the offense of 'public intoxication,'" which states:

> A. Persons who are intoxicated and found in a public place, and who, by reason of their intoxication, are a danger to themselves or others should be arrested for public intoxication.
>
> B. The arrest report will reflect the probable cause to believe the person is intoxicated.
>
> C. If a traffic violator is stopped, but not arrested and has a passenger who is intoxicated, but not a danger to himself and others, then the intoxicated person will not be arrested for public intoxication.
>
> D. Persons found to be intoxicated and circumstances indicate they were operating a motor vehicle, but no fact witness exists to place them driving, should be filed as Public Intoxication.

[Dkt. No. 89, Exhibit C; Attachment 1, "3.19 Intoxicated Persons-P.C. 42.08"]. This written policy clearly dictates that anyone intoxicated in a public place that is a danger to themselves or others is to be arrested. This official mandate is in direct contrast to the alleged "informal policy" of releasing such intoxicated individuals. Beyond the declaration of Navarro and this written policy, Defendants point to a lack of other reports of citizens being injured as a result of police officers releasing public intoxication suspects as evidence that no such policy exists. [Dkt. No. 98 at 8].

In response to Defendants' motion for summary judgment, and as evidence of an informal policy of releasing intoxicated individuals, Plaintiffs submit the deposition testimony of six Laredo Police Officers, each describing their understanding of how they are to treat intoxicated individuals. [Dkt. No. 91 at 34-37]. Each officer gave a variety of options when dealing with intoxicated persons, and answers included: arrest the individual, take them home and leave them with someone over the age of 18, cite the individual and release them, take them to a treatment facility, and drop them off where the intoxicated individual requested. [*Id.*; Dkt. No. 91, Exhibit C at 44-46; Exhibit D at 31-33; Exhibit K at 50-51; Exhibit M at 32; Exhibit P at 56-57; Exhibit Q at 51]. Officer Adrian Rodriguez also stated that "each officer has his own way of handling things." [Dkt. No. 91, Exhibit M, at 35].

Given this competing evidence, Defendants have failed to carry their burden at the summary judgment stage. The deposition testimony of one officer is not sufficient, especially when that officer refers to the fact that the jail's refusal to accept intoxication suspects "has increased the incidences of intoxicated persons being released by police officers." [Declaration of Gilberto L. Navarro, Dkt. No. 89, Exhibit C at ¶ 11]. Also, the production of a written policy describing procedure for intoxicated persons is not overly persuasive, given the nature of the

claim of an informal policy, and the deposition testimony of various officers that they do not follow the written policy.  The lack of reports of similar instances is not as persuasive as it may be in other cases concerning an allegation of a pattern or custom amounting to an official policy, as Plaintiffs do not try to prove their case in this circumstantial manner or by statistics, but rather through the direct testimony of the officers themselves.  A plaintiff should not be forced to wait for the accumulation of constitutional violations to statistically suggest a policy, when evidence of the policy can be found in the testimony of those who enforce it.  The Court concludes that when considering all of this evidence, a reasonable jury may find the existence of an informal policy, pattern, or custom of allowing police officers to release intoxicated individuals, despite the written policy to the contrary.  Accordingly, Defendants motion for summary judgment based on the argument that Plaintiffs cannot establish the existence of an "official policy" is DENIED.

        **ii.**      **Deliberate Indifference**

Defendants argue that even if the Court finds a constitutional violation and policy, Plaintiffs cannot show that the policy was "adopted with conscious indifference." [Dkt. No. 89 at 9].  To establish § 1983 municipal liability, a Plaintiff is required to show not only a policy that resulted in a constitutional violation, but also that the policy "itself is unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'"  *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 309 (5th Cir. 2004)).  "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'"  *Id.* at 617-18 (quoting *Rhyne v. Henderson County,* 973 F.2d 386, 392 (5th Cir. 1992).

Thus, in this case, Plaintiffs must show that the policy of allowing police officers to release intoxicated individuals when they knew them to be a danger to themselves or others was adopted with a conscious disregard to its "plainly obvious consequence," a violation of Kovacic's constitutional rights. *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 412 (1997). While Defendants recite the deliberate indifference standard in their motion, they fail to analyze the instant case under the standard. In fact, Defendants offer only one conclusory sentence: "Plaintiffs cannot show that a policy, practice or custom adopted with conscious indifference was the moving force behind such violation." [Dkt. No. 89 at 9]. The nature of the alleged policy itself, with the language "known to be a danger" already incorporated, is enough to suggest that it was adopted with disregard to its obvious consequences. And with all inferences in favor of the Plaintiff at this stage, the Court holds that a reasonable jury may find that the policy was adopted with the deliberate indifference required for § 1983 municipal liability. Accordingly, Defendants motion for summary judgment based the "deliberate indifference" standard is DENIED.

### iii. Policymaker

In a footnote in their reply, Defendants also dispute that then Chief of Police Agustin Dovalina was a "policymaker" within the meaning of the second element of § 1983 municipal liability. [Dkt. No. 98 at n.4]. The Supreme Court has held that

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers *or by those whose edicts or acts may fairly be said to represent official policy*, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (emphasis added). Defendants contend that since Dovalina's authority to issue "general orders" was ultimately reviewable by the City Manager, he does not qualify as a "policymaker." [Dkt. No. 98 at n.4].

9 / 11

The Laredo Police Department Rules and Regulation state: "the Chief shall have the exclusive right to establish, rescind or modify departmental rules and regulations while such contract is in effect, subject to review by the City Manager." [Dkt. No. 91 at 33; Exhibit N at 3]. However, this is not the only written grant of authority to the Chief of Police. The General Order Manual states: "[t]he Chief of Police shall be the sole authority to issue General Orders" and "Special Orders shall be issued only by the Chief of Police." [Dkt. No. 91 at 33; Exhibit O at 3-4].

Given Defendants' insubstantial summary judgment evidence, reflected by the treatment of the issue in a footnote of its reply, [Dkt. No. 98 at n.4], as well as the grants of authority in the General Order Manual, the Court finds that a reasonable jury could conclude that Police Chief Agustin Dovalina was the "policymaker" for the Laredo Police Department, that his "edicts or acts may fairly be said to represent official policy" as described in *Monell*. Indeed, courts have routinely held chiefs of police to be "law enforcement policymakers for the purposes of municipal liability under § 1983." *Kincheloe v. Caudle*, 2009 WL 3381047, at *18 (W.D. Tex. Oct. 16, 2009) (citing *Fraire v. City of Arlington,* 957 F.2d 1268, 1279 n.45 (5th Cir.) (finding that the chief of police is the principal policy maker for the Arlington Police Department), *cert. denied,* 506 U.S. 973 (1992); *Zarnow v. City of Wichita Falls,* 2009 WL 481884, at *5 (N.D. Tex. Feb. 25, 2009) (finding that chief of police was potential final policy maker for City of Wichita Falls for the purposes of § 1983 liability); *Williams v. City of Amory,* 2006 WL 1984596, at *4 (N.D. Miss. July 12, 2006) (finding that police chief was chief official law enforcement policymaker for City of Amory, Mississippi); *Redd v. City of Odessa,* 2001 WL 681588, at *11 (W.D. Tex. Mar. 6, 2001) (concluding that chief of police is final policy maker for the Odessa Police Department)). Accordingly, to the extent that Defendants seek summary

judgment on the basis that Police Chief Agustin Dovalina was not a policymaker for the purposes of § 1983 municipal liability, the same is DENIED.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, [Dkt. No. 89], is **DENIED** in its entirety. As a result, Plaintiffs' claims for a due process violation against the Officers and for § 1983 municipal liability against the City remain.

IT IS SO ORDERED.

Done this 11th day of February, 2010, in Laredo, TX.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**